IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-115-F

| | |
|---|---|
| STEPHEN EARL, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the Motion to Dismiss [DE-11] filed by Defendant United States of America ("Government"). The pro se Plaintiff has filed a response to the motion, as well as an "Amended Complaint" [DE-14], which this court construes as a motion to amend the complaint. For the reasons more fully stated below, the motion to amend is DENIED and the motion to dismiss is ALLOWED in part and DENIED in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, initiated this action on February 28, 2014, by filing a complaint [DE-1] in this court against the Government alleging (1) malpractice; (2) "refusal of follow up care;" (3) lack of proper care; and (4) "induced lack of post surgical care." Compl. [DE-1]. Plaintiff attached to the complaint two letters. The first is dated June 7, 2012, and is from the Office of Regional Counsel for the Department of Veterans Affairs. *See* Compl., Ex. A [DE-1-1]. In the letter, the Regional Counsel informs Plaintiff that his claim asserting damages "allegedly resulting from treatment by the U.S. Department of Veterans Affairs (VA) Asheville, NC VA Medical Center on or about February 4, 2010" has been denied. *Id.* at 1. The second letter is dated November 6, 2012,

and is from an attorney who ostensibly previously-represented Plaintiff. *See* Compl., Ex. B [DE-1-2]. The letter appeals the denial of Plaintiff's tort claim, and argues that Plaintiff suffered right eye damage because he was refused treatment at the Asheville VA Medical Center and Durham VA Medical Center because of a "jurisdictional squabble" between the two centers. *Id.* at 1. He asserts that "the VA facilities involved did not just fail to recognize and treat the complications, they refused to treat [Plaintiff] at all." *Id.*

On June 24, 2014, Plaintiff filed an Amended Complaint naming the Government, the Acting Secretary of the Veterans Affairs, and several employees of the Veterans Administration Medical Center, as Defendants. *See* Amended Compl. [DE-3]. He alleged "malpractice, refusal of follow-up care[,] lack of proper care[,] induced lack of post surgical care, violation of patients['] right to services." He again attached the June 7, 2012 and November 6, 2012, letters.

After receiving an extension of time to file a response to the Amended Complaint, the Government filed a Certification of Scope of Employment and Substitution [DE-10], wherein R.A. Renfer, Jr. certified that the individually named defendants (James Crandell, Dennis McClaine, Lonnie Hatton, Joe Sovatos, E. Douglas Bradshaw, Jr., and Tisha Balknell) were acting within the official scope of their employment as United States Department of Veterans Affairs personnel at the time of the incidents alleged, and that the Government was substituted as party defendant in lieu of the individually named defendants. The Government also moved to dismiss this action for Plaintiff's failure to comply with the certification prerequisite in Rule 9(j) of the North Carolina Rules of Civil Procedure.

In response, Plaintiff filed another Amended Complaint, which included the following statements:

2

> Malpractice refusal of follow-up care violation of patient[']s rights to services.
> Glaucoma specialist Robert Hunter
> 2201 Ewing St. Durham N.C (Duke University Medical Facility). Duke Medical Team review case + concluded no follow care was given.
> Additional surgery performed unsuccessfully.

Mot. to Amend [DE-14]. Plaintiff also filed two responses [DE-15; DE-16] to the motion to dismiss. In both, Plaintiff stated that Dr. Thomas Hunter, "a glaucoma specialist from the prestigious [D]uke [U]niversity concurred along with his colleagues that permanent scaring [sic] &damage to eye & vision had occurred due to no follow up care with specific eye drops i.e. negligence." He also asserts that the doctrine of *res ipsa loquitur* is applicable to this case.

Government filed response in opposition to Plaintiff's amended pleading, arguing that because he had already filed an amended complaint once as a matter of right, it would treat the amended pleading as a motion for leave to amend the complaint. The Government contended that the motion for leave to amend must be denied as a futile under Rule 15(a). The Government also filed a reply in support of its motion to dismiss, arguing that the doctrine of *res ipsa loquitur* is inapplicable to Plaintiff's claims, and also attaching the declaration of Dr. Thomas Hunter–Plaintiff's treating physician referenced in his opposition to the motion to dismiss–stating that he has not represented to Plaintiff that any permanent scarring and damage to his right eye and vision was due to negligence on behalf of any professional affiliated with the United States Veterans Administration Medical Centers in Durham or Asheville. Decl. of Thomas Hunter [DE-22-1] ¶6.

## II. STANDARD OF REVIEW

Rule 12(b)(6) allows a court to dismiss an action which fails to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent

3

with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). When considering a motion to dismiss, the court must keep in mind that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

Additionally where, as here, a party no longer may amend a pleading once as a matter course, Federal Rule of Civil Procedure 15(a)(2) allows "a party [to] amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts should liberally allow amendments:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

4

*Foman v. Davis*, 371 U.S. 178, 182 (1962). However, leave to amend is "not to be granted automatically," *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987), and a district court has discretion to deny amendment so long as the court does not "outright refuse 'to grant the leave without any justifying reason.'" *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (quoting *Foman*, 371 U.S. at 182).

### III. ANALYSIS

The resolution of the pending motions requires the application of both the Federal Tort Claims Act ("FTCA") and North Carolina law regarding negligence and medical malpractice actions.

The United States has sovereign immunity unless it waives that immunity, and even if it does waive immunity, it may be sued only to the extent of the terms of the waiver. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The Federal Torts Claims Act (FTCA) provides a limited waiver of sovereign immunity for a tort committed by a government employee within the scope of his employment. The limited waiver provides that the United States may be held liable only to the extent that a "private person would be held liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see United States v. Muniz*, 374 U.S. 150, 152–53 (1963). Since the acts alleged in the instant case occurred in North Carolina, North Carolina law applies to plaintiff's FTCA claim.

In North Carolina, a plaintiff alleging medical malpractice must comply with North Carolina Rule of Civil Procedure 9(j), which states:

> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90–21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90–21.12 shall be dismissed unless:
> (1) The pleading specifically asserts that the medical care and all medical records

5

pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
(2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j). The North Carolina General Assembly enacted Rule 9(j) "in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a complaint for medical malpractice is filed, a competent medical professional has reviewed the conduct of the defendants and concluded that the conduct did not meet the applicable standard of care." *Estate of Waters v. Jarman,* 144 N.C. App. 98, 100, 547 S.E.2d 142, 144 (2001) (quotation omitted); *see Thigpen v. Ngo,* 355 N.C. 198, 203–04, 558 S.E.2d 162, 166 (2002). The failure to comply with Rule 9(j) is grounds for dismissal of an action. *See Littlepaige v. United States*, No. 12-1367, 528 F. App'x 289, 290 (4th Cir. 2013) (affirming district court's dismissal of complaint under Rule 12(b)(6) that sounded in medical malpractice under North Carolina law where plaintiff failed to file certification under Rule 9(j)); *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.,* 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); *Frazier v. Angel Med. Ctr.,* 308 F. Supp. 2d 671, 676-77 (W.D.N.C. 2004); *Moore v. Pitt Cnty. Mem'l Hosp.,* 139 F. Supp. 2d 712, 713–14 (E.D.N.C. 2001).

Rule 9(j) provides one narrow exception: a litigant is excused from Rule 9(j)'s pre-filing certification requirement if negligence may be established under the doctrine of *res ipsa loquitur*.

6

*See* N.C. R. Civ. P. 9(j)(3); *Rowell v. Bowline,* 197 N.C.App. 691, 696-97, 678 S.E.2d 748, 751 (2009). Additionally, if a plaintiff's claim sounds in ordinary negligence, as opposed to medical malpractice, Rule 9(j) is inapplicable. *Estate of Waters*, 144 N.C. App. at 103, 678 S.E.2d at 145.

Here, Plaintiff's Original and Amended Complaint do not contain a Rule 9(j) certification. Accordingly, unless the second amended complaint—which the court is interpreting as a motion for leave to amend—contains the certification, or Plaintiff's allegations rest on *res ipsa loquitur* or his claims sound in ordinary negligence, the motion for leave to amend must be denied as futile and the action dismissed.

The court cannot view the Plaintiff's statements in responses to the motion to dismiss, or the motion for leave to amend, to constitute a Rule 9(j) certification, especially in light of the declaration filed by Dr. Thomas Hunter affirmatively stating that "[a]t no time have I represented to Mr. Earl, directly or indirectly, that any permanent scarring and damage to his right eye and vision was due to negligence on behalf of any medical professional affiliated with the United States Veterans Administration Medical Centers in Durham or Asheville," and that "[a]t no time have I agreed to testify, on behalf of Mr. Earl, that I reviewed his medical records and determined that his medical care fell below the applicable standard of care." Decl. of Thomas Hunter [DE-22-1] ¶¶ 6, 10.

Nor can the court view Plaintiff's invocation of *res ipsa loquitur* in his responses to be proper in this case. The use of the doctrine of *res ipsa loquitur* "is allowed only when the occurrence clearly speaks for itself." *Diehl v. Koffer,* 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000); *see, e.g., Tice v. Hall,* 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's body). Specifically, the doctrine of *res ipsa loquitur* applies when "(1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's

7

control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." *Grigg v. Lester,* 102 N.C. App. 332, 333, 401 S.E.2d 657, 657-58 (1991). Additionally, "in order for the doctrine to apply, not only must plaintiff have shown that [the] injury resulted from defendant's [negligent act], but plaintiff must be able to show—without the assistance of expert testimony—that the injury was not of a type typically occurring in absence of some negligence by defendant." *Howie v. Walsh,* 168 N.C. App. 694, 698, 609 S.E.2d 249, 251 (2005) (quotations omitted). To the extent that Plaintiff is alleging that certain medical professionals, in the exercise of their judgment, withheld post-surgical care from him which caused him injury, the court finds that the doctrine of *res ipsa loquitur* is not applicable. *See e.g., Cartrette v. Duke Univ. Med. Ctr.,* 189 N.C. App. 403, 659 S.E.2d 98, 2008 WL 711171, at *4 (2008) (stating that "the doctrine of *res ipsa loquitur* in medical malpractice cases has generally been limited to injuries resulting from surgical instruments or other foreign objects left in the body following surgery and injuries to a part of the patient's anatomy outside of the surgical field.") (citations and quotation omitted). Accordingly, to the extent that Plaintiff's sets forth claims based on medical malpractice, the claims fail because of the lack of the Rule 9(j) certification.

Plaintiff's allegations, however, also appear to sound in ordinary negligence. Under North Carolina law, a plaintiff may "bring ordinary negligence claims, in addition to medical malpractice claims, against a health care provider." *Iodice v. United States,* 289 F.3d 270, 276 (2002). By statute, medical malpractice claims " 'arise[ ] out of the furnishing or failure to furnish professional services' by a health care provider." *Id.* (quoting N.C. Gen. Stat. § 90-21.11). Conversely, negligence claims against a health care provider that do not "arise out of" the "furnishing" of "professional services," are not medical malpractice claims, and are governed by ordinary negligence principles. *Id.* (citing

8

*Estate of Waters*, 144 N.C. App. at 103, 547 S.E.2d at 145-56). In distinguishing between the two claims, North Carolina courts have held that "negligence actions brought against a hospital which pertain to clinical patient care constitute medical malpractice claims; however, where the . . . negligence claim arises out of policy, management or administrative decisions [of a facility] . . . the claim is instead derived from ordinary negligence principles." *Estate of Waters,* 144 N.C. App. at 103, 547 S.E.2d at 145.

At this stage of the proceeding, the court cannot say that the allegations in Plaintiff's Amended Complaint, when viewed in conjunction with the letters attached thereto, are focused only on medical malpractice as that term is defined under North Carolina law. Rather, the "jurisdictional squabble" referenced in Plaintiff's filings appear to be focused on the "policy, management or administrative decisions" of the relevant medical centers as opposed to the furnishing of professional services to Plaintiff. Accordingly, to the extent that Plaintiff asserts a claim sounding in ordinary negligence against the United States, the claim survives.

In sum, the motion to amend filed by Plaintiff is DENIED as futile. The Government's Motion to Dismiss [DE-11] is ALLOWED as to any medical malpractice claims asserted by Plaintiff, but DENIED as to Plaintiff's claim sounding in ordinary negligence.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend [DE-14] is DENIED as futile. The Government's Motion to Dismiss [DE-11] is ALLOWED as to any medical malpractice claims asserted by Plaintiff, but DENIED as to Plaintiff's claim sounding in ordinary negligence. The Clerk of Court is DIRECTED to continue with the management of this case.

SO ORDERED.

This the 2nd day of April, 2015.

*James C. Fox*
James C. Fox
Senior United States District Judge

10